UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EBONY WILSON,

    *Plaintiff*,

  v.

MARTIN O'MALLEY, *Commissioner of the Social Security Administration*,[1]

    *Defendant.*

Civil Action No. 22-604 (RDM)

## MEMORANDUM OPINION

Plaintiff Ebony Wilson alleges that the Commissioner of the Social Security Administration ("Commissioner") unlawfully denied her application for Disability Insurance ("DI") benefits and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 405(g). In particular, she alleges that the Administrative Law Judge ("ALJ") assigned to hear her case erred by failing to classify her chronic pain as a "medically determinable impairment" at step two in the governing analysis and, by implication, failed to consider her chronic pain when determining her Residual Functional Capacity ("RFC") at step five of the analysis. The Court referred this case to Magistrate Judge Michael Harvey for a Report & Recommendation ("R&R") pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, and Judge Harvey agreed with Plaintiff's first argument but rejected her second argument. Overall, he concluded "the ALJ's decision sufficiently considered Plaintiff's

---

[1] The Court automatically substitutes the current Commissioner of the Social Security Administration, Martin O'Malley, in the case caption. *See* Fed. R. Civ. P. 25(d) (providing that "when a public officer . . . ceases to hold office while the action is pending . . . [t]he officer's successor is automatically substituted as a party").

complaints of pain after step two and took them into account in his decision." Dkt. 20 at 24. As a result, in Judge Harvey's view, "'any error committed by the ALJ in finding that [Plaintiff's chronic pain] was not a medically determinable impairment [at step two] was harmless.'" *Id.* (alterations in original) (quoting *Washington v. Saul*, No. 20-cv-662, 2021 WL 2514691 at *6 (D.D.C. June 18, 2021).

The Commissioner does not object to Judge Harvey's R&R, and Plaintiff's objection is a narrow one: she merely argues that the ALJ's error at step two carried over to his consideration of her RFC and that, in the end, the ALJ failed to consider her chronic pain at any stage of the process. Dkt. 21 at 4–6. Because that contention misunderstands both the ALJ's decision and Judge Harvey's R&R, and because the Court agrees with Judge Harvey's analysis, the Court will **ADOPT** Judge Harvey's recommendation, will **DENY** Plaintiff's Motion for Judgment of Reversal, Dkt. 13, and will **GRANT** the Commissioner's Motion for Judgment of Affirmance, Dkt. 14.

**I.**

For purposes of the Social Security Act and the eligibility for SSI and DI benefits, a person is "considered to be disabled . . . if [s]he is unable to engage in substantial gainful activity by reason of any medically determined physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). "To determine whether a claimant suffers from a disability, the ALJ conducts a five-step sequential analysis." *Saunders v. Kijakazi*, 6 F.4th 1, 3 (D.C. Cir. 2021). At the first step, "the claimant must show [that] she is not engaged in substantial gainful activity." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)(i)). "At step two, the ALJ must determine whether the claimant suffers from a severe impairment." *Id.* (citing 20 C.F.R.

§§ 404.1520(a)(4)(ii), 404.1520(c), 404.1509).  And, at step three, the ALJ must "evaluate[] whether the claimant's impairment meets or equals an impairment listed in the regulations." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d)).  If the claimant clears each of these hurdles, "she is deemed disabled." *Id.* (citing *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004)).

But even if the claimant is unsuccessful up to this point, a claimant may still qualify to receive benefits if she can show, at step four, "that she is incapable of performing her previous work." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f)).  In particular, if the claimant can demonstrate that she is unable "to perform her previous work, the ALJ must then determine at step five whether the claimant can make an adjustment to other work while taking into consideration the claimant's residual functional capacity." *Id.* at 3–4 (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)).  Notably, "[t]he claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner on the fifth step." *Id.* at 4 (citing *Butler*, 353 F.3d at 993).

Here, the ALJ held a hearing by telephone on April 7, 2021, at which Plaintiff testified and submitted written evidence, including medical source statements from her doctors.  Dkt. 10-2 at 34–68 (Hrg. Tr.); *see also, e.g.*, Dkt. 10-9 at 48–55 (Dr. Dominguez's Medical Source Statements).  The ALJ issued his decision on April 21, 2021, denying her application for benefits.  Dkt.10-2 at 16–27.  At step one, the ALJ found in Plaintiff's favor, concluding that she had not engaged in substantial gainful activity since October 1, 2018.  *Id.* at 18–19.  At step two, he found that she has "the following severe impairments: thyroid disorder, hernias, and obesity" and "the following nonsevere impairments: obstructive sleep apnea, visual disturbances, and chronic sinusitis." *Id.* at 19.  He further concluded, however, that her "alleged post-traumatic

stress disorder, anxiety disorder, and other mental health issues are not medically determinable impairments due to a lack of objective evidence" and that her alleged fibromyalgia does not constitute a medically determinable impairment under the relevant Social Security Ruling ("SSR"). *Id.* at 19–20 (citing SSR 12-2p). At step three, the ALJ found that Plaintiff's thyroid gland disorder, hernias, and obesity do not "meet[] or medically equal[]" the severity of any of the impairments listed in 20 C.F.R. § 404. *Id.* at 20.

Consistent with the governing framework, the ALJ then proceeded to step four and found, "[a]fter careful consideration of the entire record, . . . that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: occasionally climb stairs and ladders; occasionally stoop, kneel, crouch, and crawl; frequently balance." *Id.* at 21. Of particular relevance here, he concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 22. He determined that she is "capable of performing past relevant work as a Teacher Aide, a Retail Clerk, a Retail Supervisor, a Child Care Teacher, and as an Assistant Manager" because that work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* at 26. Based on these findings, the ALJ concluded that Plaintiff "is not disabled under sections 216(i) and 223(d) of the Social Security Act" and "is not disabled under section 1614(a)(3)(A) of the Social Security Act." *Id.* at 27.

Plaintiff filed an administrative appeal, but the Appeals Council declined to review the decision. As a result, the ALJ's decision constitutes the final decision of the Commissioner for

present purposes.  Plaintiff timely sought judicial review of that decision pursuant to 42 U.S.C. § 405(g), Dkt. 1, and the Court referred the matter to Magistrate Judge G. Michael Harvey for a report and recommendation, Min. Order (Mar. 14, 2022).  After considering Plaintiff's Motion for Judgment of Reversal, Dkt. 13, and the Commissioner's Motion for Judgment of Affirmance, Dkt. 14, Judge Harvey issued his Report & Recommendation, Dkt. 20.

Judge Harvey first concluded that the ALJ erred at "step two" of his decision, when he considered Wilson's fibromyalgia diagnosis but not her chronic pain more generally.  Dkt. 20 at 18.  As Judge Harvey observed, the record was "replete with references to Plaintiff's chronic pain," including Dr. Mbuyi's diagnosis of chronic myofascial syndrome and Dr. Dominguez's diagnosis of chronic idiopathic syndrome, and the ALJ should have addressed this evidence at step two.  *Id.*  Judge Harvey noted that it was possible that this evidence was insufficient to support a finding that Plaintiff suffers from a medically determinable impairment, but he concluded that the ALJ erred by failing to address this question and explained that counsel's post-hoc analysis of the record was no substitute for consideration—and explanation—by the ALJ.  *Id.* at 18–19.

Judge Harvey was nonetheless persuaded that the ALJ's error was harmless and did not warrant reversal.  *Id.* at 19–24.  As Judge Harvey explained, when an ALJ finds, at step four, that the claimant suffers from an impairment that prevents her from performing her past, relevant work, and proceeds to consider how that an impairment affects the claimant's Residual Functional Capacity, the ALJ's failure to consider the impairment at step two may be rendered harmless.  *Id.* at 19 (quoting *Amos v. Berryhill*, No. 17-cv-1707, 2019 WL 3451313, at *9 (D.D.C. June 3, 2019)); *see also id.* at 19–20 (collecting cases).  To show prejudice, Judge Harvey explained, Plaintiff "must either demonstrate that [she] would meet a listing at step three,

5

or that the RFC did not adequately account for the omitted impairment or its symptoms." *Id.* at 20.  Here, she did neither.  The RFC was based on careful consideration of the entire record, including the symptoms of Plaintiff's chronic pain, such as her joint pain and limitations standing, walking, and moving about.  *Id.* at 21–22.  And, the ALJ did account for the medical opinions, including those of Dr. Dominguez, that highlighted Plaintiff's chronic pain; he just found those opinions less persuasive than Plaintiff urges.  The ALJ, moreover, did incorporate Plaintiff's complaints of pain and fatigue into his decision that she should be "limited to only light work with the additional postural limitations detailed."  *Id.* at 23 (quoting Dkt. 10-2 at 24).

Given the ALJ's more complete consideration of the relevant medical opinions and evidence at steps four and five, Judge Harvey concluded that the ALJ's more truncated consideration at step two was not prejudicial.  *Id.* at 24.  He, accordingly, recommends that the Court deny Plaintiff's motion and grant the Commissioner's cross-motion.  *Id.* at 25.

**II.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, once a magistrate judge issues a report and recommendation on a dispositive motion, the district judge must engage in de novo review of "any part of the magistrate judge's disposition" to which either party timely objects.  Fed. R. Civ. P. 72(b)(3).  After doing so, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*  Significantly, district courts review "only those issues that the parties have raised in their objections," *Taylor v. District of Columbia*, 205 F. Supp. 3d 75, 79 (D.D.C. 2016) (quoting *Aikens v. Shalala*, 956 F. Supp. 14, 19 (D.D.C. 1997)), and, as with appellate review, the parties may not raise arguments or claims that were not raised and explicated before the magistrate judge, *id.* (citation omitted).

6

### III.

Here, neither party objects to Judge Harvey's conclusion that the ALJ erred by failing to consider Plaintiff's chronic pain as a possible medically determinable impairment at step two. Dkt. 20 at 16–19; *see* Dkts. 21, 22. Plaintiff does, however, object to Judge Harvey's subsequent conclusion that this error was harmless. Dkt. 21. The Commissioner does not raise any objections of his own. *See* Dkt. 22. The Court will, accordingly, limit its review to Plaintiff's contention that Judge Harvey incorrectly concluded that the ALJ's error was harmless. Dkt. 20 at 19–24; Dkt. 21 at 2–6.

Plaintiff makes two arguments in support of her objection. First, she argues that the ALJ's error in not considering her chronic pain as a medically determinable impairment at step two was inescapably prejudicial. Dkt. 21 at 3–4. In her view, "if the impairment is not medically determinable [at step two], then [it] does not receive consideration" at any subsequent step in the "sequential evaluation process." *Id.* at 3. Second, Plaintiff argues that the ALJ committed prejudicial error in discrediting Dr. Dominguez's opinions. *Id.* at 5. Echoing her first argument, Plaintiff maintains that because the ALJ did not take Dr. Dominguez's findings of chronic pain seriously at step two, he must not have taken those findings seriously at the later stages of the decision. *Id.* at 6. For the reasons explained below, the Court is not persuaded by either argument.

### A.

Plaintiff's first argument misunderstands Judge Harvey's R&R. She starts with the following syllogism: "if the impairment is medically determinable, then the ALJ must consider the impairment throughout the sequential evaluation process." Dkt. 21 at 3. So far, so good. But she then commits a logical misstep—the fallacy of denying the antecedent—and argues that

7

the inverse must also be true: "if the impairment is not medically determinable, then the impairment does not receive consideration." *Id.*  By way of analogy, it is, of course, true that "if it is raining, the plants in your garden are wet."  But it does not follow that, if the plants in your garden are wet, it must be raining—you might have just watered the garden with a hose.

But, even beyond the rules of logic, Plaintiff's argument ignores the fact that the record, as thoroughly explicated by Judge Harvey, shows that the ALJ did, indeed, consider the evidence at issue at steps four and five.  *See* Dkt. 20 at 21–22.  Plaintiff argues that the ALJ did not consider her chronic pain, and associated symptoms of fatigue, sleeping problems, and trouble lifting heavy objects, when deciding on her residual functional capacity at step four, *see* Dkt. 13-1 at 13, but the record leaves little doubt that the ALJ considered the evidence of her chronic pain, even if he failed to classify it as a medically determinable impairment at step two.  *See, e.g.*, Dkt. 10-2 at 21 (deciding on her residual functional capacity after "careful consideration of the entire record"); *id.* (taking note of her reports of extreme fatigue and joint pain limiting her movement); *id.* at 22 (noting her descriptions of her significant joint pain and fatigue from her hearing); *id.* (acknowledging references in the record to fatigue and diffuse pain but noting that her "physical examinations do not reflect debilitating symptoms"); *id.* at 23 (analyzing her complaints of fatigue and widespread bodily pain while noting reports of no acute distress and normal physicality and strength).  Plaintiff argues, for example, that "the ALJ did not consider the chronic pain when constructing the residual functional capacity," Dkt. 21 at 4, but the ALJ's opinion reveals otherwise: he repeatedly analyzed all of the "symptoms as alleged by [Plaintiff,]" including "fatigue, daytime drowsiness, and 'pain all over her body,'" Dkt. 10-2 at 22.  The fact that the ALJ concluded that Plaintiff's complaints were not supported by the "totality of the medical evidence," *id.*, does not mean he failed to consider them.  Rather, he considered them

8

but was unpersuaded that they merited the relief that Plaintiff sought. Among other things, the ALJ documented how Plaintiff complained of diffuse pain throughout 2020 and January 2021, but he also considered the countervailing evidence that she had multiple physical examinations that showed no acute distress, normal functioning and range of motion, healthy appearances, and were generally unremarkable. *Id.*

Nor does Plaintiff even argue (1) that the outcome at steps three and four would have been different had the ALJ classified her chronic pain as "a medically determinable impairment" at step two or (2) that the ALJ should have classified the impairment as severe at step two. *See* Dkt. 21 at 3. In her Motion for Judgment of Reversal, moreover, Plaintiff merely noted, "if the ALJ properly considered [her] chronic pain as a medically determinable impairment, the ALJ *may have* then classified the impairment as severe, thus requiring the ALJ to move on to step three of the sequential evaluation process." Dkt. 13-1 at 14 (emphasis added). Given the ALJ's conclusions at steps four and five, that speculation is far from sufficient to overturn the ALJ's determination. Furthermore, Plaintiff's objections to Judge Harvey's decision, which are all that is properly before the Court, offer no basis to conclude that the ALJ should have found that the impairments were "severe" and, even more importantly, do not take issue with the portion of Judge Harvey's R&R explaining that Plaintiff "does not argue that the ALJ should have classified her chronic pain as severe [. . . or] that her chronic pain met a listing at step three." Dkt. 20 at 15. Instead, Plaintiff argues only that it does not matter whether the ALJ would have considered the impairment severe because the "ALJ would still be obligated to consider the impact of that impairment when creating the residual functional capacity." Dkt. 21 at 3. But, as previously explained, that is precisely what the ALJ did.

9

Plaintiff's argument that she was prejudiced because the ALJ did not consider her chronic pain after step two is therefore unpersuasive.

**B.**

Plaintiff's second argument fares no better. She contends that the ALJ also committed prejudicial error by not fully crediting Dr. Dominguez's opinions. *See* Dkt. 21 at 5. The Commissioner objects to this argument as it was not raised in prior briefing and, thus, may not be raised as an objection to the R&R. Dkt. 22 at 4 (citing *Thomas v. Moreland*, No.18-cv-800, 2022 WL 2168109, at *2 (D.D.C. June 16, 2022); *Aikens v. Shalala*, 956 F. Supp. 14, 19 (D.D.C. 1997)). The Court disagrees—at least in part. As Plaintiff responds, one of the arguments she presented to Judge Harvey—namely, that the ALJ committed an error at step two by overlooking Dr. Dominguez's opinions—requires consideration of whether the error was prejudicial and, therefore, requires the Court to assess whether the error affected later stages of the sequential analysis. The Court will give Plaintiff the benefit of the doubt and will consider on the merits her contention that the ALJ failed to take Dr. Dominguez's opinions "seriously" through the process. Dkt. 21 at 6. But, even with that leeway, the argument fails for a number of reasons.

To start, Plaintiff overreads Judge Harvey's conclusion that the ALJ erred in not assessing whether her chronic pain was a medically determinable impairment. She claims that "Judge [Harvey] made it clear that the record supported [her] diagnosis of chronic pain," Dkt. 21 at 4, but that misstates Judge Harvey's conclusion. More accurately stated, Judge Harvey merely observed that, apart from the discussion of fibromyalgia, the ALJ's decision at step two was "otherwise silent as to her reports of chronic pain." Dkt. 20 at 18. The error that Judge Harvey identified at step two was the ALJ's failure fully to consider other chronic pain impairments— Judge Harvey did *not* conclude that the ALJ should have found, based on the record evidence,

10

that Plaintiff's chronic pain, in fact, constituted a medically determinable physical impairment. *Id.* Indeed, Judge Harvey could not have been clearer about the scope of his conclusions, noting that "[t]he government *may be correct* that the medical evidence concerning Plaintiff's reports of chronic pain is insufficient to find such an impairment," and merely found that it was an error not to discuss that in the analysis. *Id.* (emphasis added).

Plaintiff further argues that because the ALJ improperly discredited Dr. Dominguez's opinion at step two, he must have done the same at steps three and four. That argument, again, cannot be squared with the record. At step two, the ALJ determined that Dr. Dominguez's opinion that Plaintiff has fibromyalgia was not a sufficient basis for concluding that she had fibromyalgia as a medically determinable impairment. The ALJ reached this conclusion because the record showed neither "the requisite number of tender point findings" nor "evidence that medical doctors have excluded other impairments as required in SSR 12-2p." Dkt. 10-2 at 19. The conclusion that Dr. Dominguez did not provide enough evidence to satisfy SSR 12-2p with respect to fibromyalgia does not mean that the ALJ ignored the evidence that Dr. Dominguez did provide (regarding both fibromyalgia and other possible conditions) or that the ALJ failed to consider that evidence at later points in the process. Plaintiff points to nothing in the record that suggests a different outcome at step two would have changed how the ALJ approached steps four and five.

To the extent that Plaintiff is separately challenging the ALJ's step-four assessment of the evidence from Dr. Dominguez, moreover, the Court concludes that the ALJ's analysis is supported by "substantial evidence." Dkt. 20 at 13. Courts review the factual findings of an agency under the "substantial evidence" standard. 42 U.S.C. § 405(g). In applying this standard, "a court looks to an existing administrative record and asks whether it contains 'sufficien[t]

11

evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In this context, "the threshold for such evidentiary sufficiency is not high[:]" it is just "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison Co.*, 305 U.S. at 229). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co.*, 305 U.S. at 229; citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)). Notably, an "agency's factual findings may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." *Dillmon v. Nat'l Transp. Safety Bd.*, 588 F.3d 1085, 1089 (D.C. Cir. 2009) (quotation marks omitted). Accordingly, it is not enough for Plaintiff to show that Dr. Dominguez's opinion pointed towards a different conclusion; she must demonstrate that, after considering the record as whole, no "reasonable mind" could have reached the conclusion that the ALJ did regarding her RFC. She has not met that burden.

At step four, the ALJ found that the extent of the physical limitations that Dr. Dominguez identified were inconsistent with the other objective medical evidence regarding Plaintiff's condition. Dkt. 10-2 at 24–25. The ALJ had previously considered the opinions of Dr. Bedeau and Dr. Williams, which indicated that Plaintiff could perform light work, ambulate six hours of an eight-hour workday and lift up to 20 pounds. *Id.* at 23. Dr. Dominguez's opinion that Plaintiff could sit, stand, or walk for less than two hours and only occasionally move her lower body in other fashions was significantly more restrictive. *Id.* at 24. The ALJ recognized that Dr. Dominguez's opinion may have reflected Wilson's subjective complaints of pain and fatigue, but he found those complaints incongruous with the "generally unremarkable" results of her many physical examinations, which showed few restrictions on her various bodily systems. *Id.* To the

extent the ALJ's conclusions are supported by substantial evidence, the Court may not substitute its judgment for that of the ALJ. Here, moreover, the record includes numerous physical examinations reporting that the Plaintiff was in "no apparent distress" and had "normal" system functioning even though she reported chronic pain. *See, e.g.*, Dkt. 10-9 at 11, 21, 25. Even the physical exam that Dr. Dominguez conducted on January 6, 2021, reported a range of motion within normal limits with no pain ("MSK" (musculoskeletal): "ROM WNL, no pain"). Dkt. 10-9 at 8. And even if Dr. Dominguez's medical source statement provides some objective evidence that might have supported a narrower residual functioning capacity, the Court is persuaded that substantial evidence supports the ALJ's determination that at least portions of Dr. Dominguez's opinion were inconsistent with other evidence in the record.

Finally, the Court notes that to establish prejudice, Plaintiff would need to show that, had the ALJ had found Dr. Dominguez's medical opinion persuasive, he would have adopted a different RFC. Here, however, the ALJ gave Plaintiff "the upmost benefit of the doubt that can be reasonabl[y] supported by the medical evidence," Dkt. 10-2 at 23, and limited her to "light work" with only occasional stairs, ladders, stooping, kneeling, crouching, and crawling. *Id.* Without substituting its judgment for that of the ALJ and reweighing the evidence presented, there are no grounds from which the Court can conclude that the ALJ would have come to a different conclusion as to her RFC had he found Dr. Dominguez's statement more compelling.

Plaintiff's argument that she was prejudiced because the ALJ discredited Dr. Dominguez's opinions is therefore also unpersuasive.

## CONCLUSION

For the foregoing reasons, the Court will **ADOPT** the Magistrate Judge's Report and Recommendation, Dkt. 20, will **DENY** Plaintiff's Motion for Judgment of Reversal, Dkt. 13, and will **GRANT** Defendant's Motion for Judgment of Affirmance, Dkt. 14.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: February 1, 2024